UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

EMMANUEL REYES,                                                                      Case No.
     *Plaintiff,*
v.

CITY OF MIAMI,
ZULEMA DOMINGUEZ, individually and in her capacity as a City of Miami
Police Officer, and NESTOR AMORES, individually
and in his capacity as a City of Miami Police Officer,
     *Defendants.*
_____/

## COMPLAINT

The Plaintiff, EMMANUEL REYES, sues the Defendants, CITY OF MIAMI ("the City"), ZULEMA DOMINGUEZ ("OFFICER DOMINGUEZ"), and NESTOR AMORES ("OFFICER AMORES") and alleges:

### Nature of the Case

1. This lawsuit presents claims for damages for the violation of EMMANUEL REYES's constitutional rights, brought by OFFICER DOMINGUEZ and OFFICER AMORES.

2. This action alleges violations of basic constitutional rights on June 12, 2013, which resulted in EMMANUEL REYES's suffering permanent physical and mental injuries.

3. This suit asserts that the Defendants acted improperly, excessively, and negligently in that the acts and/or omissions of the City, its police department, and its police officers created an atmosphere of hostility and harassment against citizens, including EMANNUEL REYES.

4. On June 12, 2013, Defendant OFFICER AMORES was hired by the Marlins Stadium to help with traffic control and was working off-duty at 17th Avenue and 3rd Street. OFFICER AMORES stopped EMMANUEL REYES for speeding.

5. EMMANUEL REYES stopped the car. OFFICER AMORES and OFFICER DOMINGUEZ asked him to turn off the vehicle. Then, as EMMANUEL REYES exited the vehicle, the officers confiscated his phone claiming it for liability purposes in the case of a damaged cell phone.

6. EMMANUEL REYES abided by OFFICERS AMORES' AND DOMINGUEZ's orders and put his hands on the roof of the car. Then, after putting his hands down, OFFICER DOMINGUEZ, who was to his left, tried to place his hand on the roof and he resisted. She tried to cuff EMMANUEL REYES by pulling his hands behind his back. When he resisted, OFFICER AMORES tased him from the right simply for resisting.

7. EMMANUEL REYES did not ever hit the officers, try to attack them, or point anything at them.

8. OFFICER DOMINGUEZ then shot EMMANUEL REYES two times—one bullet went through his throat and one went through his stomach.

9. OFFICER AMORES testified he remembered holding EMMANUEL REYES's artery with blood spewing out of it. Plaintiff told him, "You just killed me." Defendants DOMINGUEZ and AMORES both believed that firing at REYES, which resulted in a two month coma and severe permanent injuries, was proper use of force.

10. Further, this lawsuit alleges that on June 12, 2013, OFFICER DOMINGUEZ, who was employed by the City of Miami Police Department, unjustifiably shot at EMMANUEL REYES two times, striking him in the throat and abdomen. Said shooting was illegal, negligent, and improper.

11. As more particularity alleged herein, Defendant City, its elected officials, police department, and police officers are legally liable for the shooting of EMMANUEL REYES because of their pattern and practice of failing to properly hire, train, supervise, discipline, and/or retrain their police force in a manner consistent with the protections afforded under the Constitution of the United States of America, federal statutes, and Florida law.

12. This lawsuit asserts that the City Police acted improperly by using excessive force when no substantial threat was posed by EMMANUEL REYES.

13. This suit further alleges that EMMANUEL REYES was unarmed and posed no real threat to OFFICER DOMINGUEZ, OFFICER AMORES, himself, or anyone else. Yet, said officers acted beyond the scope of their responsibilities. Rookie OFFICER DOMINGUEZ relentlessly and negligently shot EMMANUEL REYES in the throat and abdomen.

14. Plaintiff seeks damages against CITY OF MIAMI pursuant to Florida Statute 768.28 for inter-alia; state common law counts of battery; aggravated battery; false imprisonment; and negligence.

15. Plaintiff seeks damages against Defendants for violation of EMMANUEL REYES's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America pursuant to 42

U.S.C. §1983, as well as other federal laws. Additionally, Plaintiff asserts state law claims of negligence and excessive use of force, as well as demand trial by jury.

## Jurisdiction and Venue

16. This action for damages is brought to redress violations of federally-protected constitutional rights pursuant to 42 U.S.C. § 1983 and 1988, and the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America, along with supplemental state-law claims for wrongful death.

17. This Court enjoys jurisdiction pursuant to 28 U.S.C. §§ 1334 and 1343(1), (3), and (4), 2201 and 2202; whereas 28 U.S.C. § 1367(a) grants the Court supplemental jurisdiction over the state-law claims.

18. Venue properly lies in the Southern District of Florida because all events giving rise to this action occurred in Miami-Dade County, Florida.

**19.** Notice of this claim has been provided to the Defendants in accordance with Fla. Stat. §768.28 and Plaintiff has satisfied all conditions precedent to bring this lawsuit.

## The Parties

20. The Plaintiff, EMMANUEL REYES, was and at all times material hereto an adult resident and citizen of the State of Florida.

21. EMMANUEL REYES has suffered long term injuries as a result of officer aggression from June 12, 2013. He was unjustifiably shot two times in the throat and abdomen, resulting in a two-month coma and severe, permanent injuries. OFFICER DOMINGUEZ acted beyond the scope of her responsibilities,

especially because Plaintiff posed no real threat to officers, himself, or anyone else.

22. The Defendant City is a municipality, organized under the laws of the State of Florida, located within Miami-Dade County, Florida, which is responsible through its officers, employees, servants, and agents for enforcing the rules and regulations of the City, and for ensuring that its officers, employees, servants, and agents obey the laws of the United States of America and the State of Florida.

23. The City at all times material hereto operated the City of Miami Police Department (the "Department").

24. Defendant DOMINGUEZ was, at all times material hereto, a duly appointed police officer of the Department.

25. Defendant AMORES was, at all times material hereto, a duly appointed police officer of the Department.

## Jury Demand

26. EMMANUEL REYES demands a trial by jury of all issues.

## General Allegations

27. On or about Wednesday, June 12, 2013, between 17th Avenue and 3rd Street, in Miami, Florida, OFFICER DOMINGUEZ, unjustifiably and without provocation shot EMMANUEL REYES two times in the throat and stomach. As a result, he was put into a two month coma and is now permanently injured.

28. Without displaying any sign of aggression or trouble, EMMANUEL REYES pulled over his vehicle for the officers when driving past the Marlins Stadium when OFFICER DOMINGUEZ aggressively accosted EMMANUEL REYES, immediately initiating an unnecessary and wholly unwarranted confrontation. For no apparent reason, OFFICER DOMINGUEZ shot him in the throat and stomach, and OFFICER AMORES tased him.

29. EMMANUEL REYES was unarmed; was not a threat to OFFICER DOMINGUEZ, OFFICER AMORES, himself, or anyone else; and was complying by pulling over his vehicle when approached. At no point did EMMANUEL REYES display any weapon or in any way physically threaten OFFICER DOMINGUEZ, OFFICER AMORES, or any other person in the vicinity.

30. OFFICER DOMINGUEZ suddenly, without justification, and without provocation, fired two shots at a close range, striking EMMANUEL REYES in the throat and stomach.

31. EMMANUEL REYES suffered from gunshot wounds and a coma inflicted by OFFICER DOMINGUEZ's actions.

32. OFFICER DOMINGUEZ's course of action is but one of many in a rash of questionable officer-involved shootings amid an epidemic of botched internal-affairs investigations in the City and Department.

33. OFFICER DOMINGUEZ received basic police training provided by the police academy prior to this incident.

34. OFFICER AMORES received basic police training provided by the police academy prior to this incident.

## COUNT I – VIOLATION OF CIVIL RIGHTS UNDER § 1983 AGAINST THE CITY

35. EMMANUEL REYES re-alleges the allegations of paragraphs 1-34, *supra*, and incorporates them as if stated herein in full.

36. A reasonable officer standing in the shoes of OFFICER DOMINGUEZ and confronted with the same circumstances would believe that <u>no force</u>—much less deadly force—was necessary in the situation. EMMANUEL REYES had committed no crime. He brandished no weapon and posed no threat to the safety of OFFICER DOMINGUEZ, OFFICER AMORES, himself, or others. EMMANUEL REYES complied with the officers' demands and offered no physical resistance and made no attempt to flee. OFFICER DOMINGUEZ shot EMMANUEL REYES when he posed no significant threat whatsoever.

37. The City was responsible for following and implementing all relevant laws, rules, regulations, and policies with regard to screening, hiring, retaining, training, supervising, controlling, disciplining, and assigning to duties the officers of the Department.

38. The City was deliberately, callously, or recklessly indifferent to the rights of individuals, particularly EMMANUEL REYES, in that it instituted a custom or policy of negligently, recklessly, or willfully failing properly to screen, hire, retain, train, supervise, control, discipline, and assign to duties the officers of the Department, notwithstanding the unusually high numbers and frequency of officer-involved shootings.

39. The Department and the City had a custom and practice of using excessive force, including lethal force when the circumstances called for less-than-lethal force or no force, against individuals such as Emmanuel Reyes.

40. The Department and the City had a custom and practice of using excessive force, including lethal force when the circumstances called for less-than-lethal force or no force, more frequently than officers in other similarly-sized and similarly-situated cities.

41. The Department and the City had a custom and practice of using excessive force, including lethal force when the circumstances called for less-than-lethal force or no force, when alternative means of handling the situation were available.

42. The Department and the City failed by custom and practice to have any effective policy or procedure to prevent the use of excessive force against individuals such as EMMANUEL REYES.

43. The City failed to determine whether members of the Department, particularly OFFICER DOMINGUEZ, posed a threat to the public as a result of their propensity to commit unlawful acts and to engage in violent activity.

44. The Department and the City acted with deliberate, callous, or reckless indifference to the constitutional rights of EMMANUEL REYES.

45. The City knew or should have known that its deliberate, callous, or reckless indifference foreseeably would result in injury to members of the public, including EMMANUEL REYES.

46. In light of the excessive number and frequency of officer-involved shootings, the need for the City to train or retrain officers on the use of force and to investigate and discipline officers involved in unjustified shootings was obvious.

47. Despite its knowledge of the dangerous propensities of the members of the Department, particularly OFFICER DOMINGUEZ, the City failed and refused to remove such members of the Department from their positions as police officers, failed and refused to take meaningful disciplinary action against such members of the Department, and failed to provide redress for members of the public, such as EMMANUEL REYES, who have been injured thereby.

48. The City, through its deliberate, callous, or reckless indifference, failed to ensure that the members of the Department, particularly OFFICER DOMINGUEZ, while acting within the course and scope of their employment and while acting under color of law, would not violate the constitutional and statutory rights of the public, including EMMANUEL REYES.

49. The City of Miami Police Department, though its officers, maintained a custom or policy of using excessive force.

50. The City caused, permitted, and tolerated a pattern and practice of unjustified, unreasonable, unlawful, and excessive use of force against members of the public by officers of the Department, and failed to prosecute, discipline, or train the officers involved, causing and encouraging the members of the Department to believe that individuals could be subjected to the use of excessive force and that the City would permit and protect such use of excessive force.

51. The above-described conduct represents a pattern and practice by which members of the public were injured or killed by the intentional and/or reckless misconduct of the City's police officers and/or that serious incompetence or misbehavior was widespread throughout the Department.

52. The City established and maintained a system of reviewing incidents and complaints of abuse of authority, such as, *inter alia*, the excessive use of force by members of the Department, that failed to identify the abuse of authority and use of excessive force as such and failed to subject the officers involved to appropriate supervision, discipline, and training, such that it has become the custom, policy, pattern, and practice of the City to encourage and tolerate such abuse of authority and use of excessive force.

53. The City, through the Department, has maintained a longstanding, wide spread history of failing to properly hire, train, supervise, and/or discipline its officers for, *inter alia*, illegal uses of force, even though there has been repeated, widely publicized notice of the unlawful and improper conduct of its employees.

54. A July 9, 2013 comprehensive report from the United States Department of Justice ("DOJ") Civil Rights Division – in and of itself – confirms the allegations of paragraphs 26-32 above. In that report the DOJ, conducted a comprehensive review of City police shootings to determine whether it engaged in a pattern or practice of excessive use of deadly force by firearms.

> "Based on our comprehensive review, we find reasonable cause to believe that MPD engages in a pattern or practice of executive use of force with respect to firearm discharges. We arrived at this conclusion based on interviews of relevant witnesses; a careful review of MPD policies; reviews of investigative files in connection with incidents of firearm discharges; and reviews of policies and practices related to internal investigations of uses

of deadly force. Among other findings, our investigation uncovered a number of troubling MPD practices, including deficient tactics and supervision as well as significant delays in substantive deficiencies in deadly force investigations." (EXHIBIT A)

55. The above referenced acts, omissions, policies, and customs of the City caused its police officers, including Defendants OFFICER DOMINGUEZ and OFFICER AMORES, to believe that such acts of improper uses of force would not be properly monitored by supervisory officers, and would not be properly investigated or sanctioned, but instead would be tolerated. The foreseeable result being that officers, like Defendant OFFICER DOMINGUEZ, were more likely to use improper or excessive force.

56. The actions of the Department and the City violated EMMANUEL REYES's clearly established, well-settled, and constitutionally protected rights to not be deprived of his life, to not be deprived of his liberty without due process of law, and to be free from the use of excessive, unreasonable, and unjustified force against his person.

57. EMMANUEL REYES was a victim of such abuse of lawful authority and Defendants' illegal acts were the direct result of the above-described acts, omissions, policies, or customs of the City. Furthermore, as a result of the City's and Department's pattern and practice of using excessive force and the rash of unjustified officer-involved homicides, the U.S. Department of Justice has opened an investigation into the City's and Department's use of deadly force, including an investigation into EMMANUEL REYES's shooting.

58. As a direct and proximate result of the deprivation of his constitutionally protected rights, EMMANUEL REYES was seriously wounded and incurred damages, including physical pain and suffering and emotional trauma and suffering.

**WHEREFORE,** the Plaintiff, EMMANUEL REYES, prays that this Honorable Court enter judgment against the Defendant, CITY OF MIAMI, for violating 42 U.S.C. § 1983, declare the acts of the CITY OF MIAMI violative of EMMANUEL REYES's constitutionally protected rights, award compensatory damages, and award attorney's fees and costs pursuant to 42 U.S.C. § 1988(b), along with any and all other relief the Court deems proper and just.

## **COUNT II – VIOLATION OF CIVIL RIGHTS UNDER § 1983 AGAINST OFFICER DOMINGUEZ and OFFICER AMORES**

59. EMMANUEL REYES re-alleges the allegations of paragraphs 1-34, *supra*, and incorporates them as if stated herein in full.

60. OFFICER DOMINGUEZ, when she accosted and shot EMMANUEL REYES, and OFFICER AMORES, when he tased EMMANUEL REYES without apparent reason, subjected EMMANUEL REYES to the deprivation of clearly established rights, privileges, and immunities secured by the Constitution and laws of the United States, including the right to be free from unreasonable seizure, the right to not be deprived of life and liberty without due process of law, and the right to be free from the use of excessive force against his person.

61. OFFICER DOMINGUEZ and OFFICER AMORES's conduct was committed with deliberate, callous, or reckless indifference to EMMANUEL REYES's constitutional rights.

62. Any reasonable officer standing in OFFICER AMORES and DOMINGUEZ's shoes would have known that OFFICER AMORES and DOMINGUEZ's conduct would result in the deprivation of EMMANUEL REYES's constitutional rights.

63. Alternative means, other than the use of lethal force, were available to handle the situation.

64. As a direct and proximate result of the deprivation of his constitutionally protected rights, EMMANUEL REYES incurred damages, including physical pain and suffering and emotional trauma and suffering.

**WHEREFORE,** the Plaintiff, EMMANUEL REYES prays that this Honorable Court enter judgment against the Defendants, OFFICER DOMINGUEZ and OFFICER AMORES, for violating 42 U.S.C. § 1983, declare the acts of OFFICER DOMINGUEZ and OFFICER AMORES violative of EMMANUEL REYES's constitutionally protected rights, award compensatory damages, award punitive damages, and award attorney's fees and costs pursuant to 42 U.S.C. § 1988(b), along with any and all other relief the Court deems proper and just.

### COUNT III – EXCESSIVE FORCE AGAINST OFFICER DOMINGUEZ

65. EMMANUEL REYES re-alleges the allegations of paragraphs 1-34, *supra*, and incorporates them as if stated herein in full.

66. Police officers have a common-law duty to exercise reasonable care in carrying out their law-enforcement responsibilities.

67. OFFICER DOMINGUEZ breached that duty when she shot EMMANUEL in the throat and stomach 2 times.

68. A reasonable officer standing in OFFICER DOMINGUEZ's shoes and confronted with the same circumstances would believe that no force—much less deadly force—was necessary in the situation.

69. Alternative means of handling the situation were available to OFFICER DOMINGUEZ.

70. OFFICER DOMINGUEZ's conduct in interacting with EMMANUEL REYES was committed in a manner exhibiting wanton and willful disregard of human rights and safety.

71. As a direct and proximate result of OFFICER DOMINGUEZ's breach of her duty, EMMANUEL REYES was hospitalized and mentally damaged.

72. As a further direct and proximate result of OFFICER DOMINGUEZ's breach of her duties, EMMANUEL REYES suffered damages.

**WHEREFORE,** in light of the foregoing, the Plaintiff, EMMANUEL REYES prays that this Honorable Court enter judgment against the Defendant, OFFICER DOMINGUEZ and award damages for loss of support and services, mental pain and suffering, hospital expenses, and lost prospective net accumulations, as well as punitive damages, along with all other relief the Court deems proper and just.

Dated this 8th th day of June, 2017.    Respectfully submitted,

  /s/ Richard J. Diaz
Richard J. Diaz, Esq. (F.B.N. 0767697)
Richard J. Diaz, P.A.
3427 Ponce de Leon Blvd
Coral Gables, FL 33434
P: (305) 444-7181
F: (305) 444-8178